**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Deda Nikoll Makaj, ) | No. CV 07-0342-PHX-JAT |
| ) | |
| Petitioner, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| ) | |
| John K. Crowther, et al., ) | |
| ) | |
| Respondents. ) | |
| ) | |
| ) | |

Pending before the Court is Petitioner Deda Nikoll Makaj's Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2241 ("Petition") (Doc. # 1). This action was referred to Magistrate Judge Duncan, who issued a Report and Recommendation ("R&R") recommending that the petition be granted (Doc. # 26). Respondents timely filed Objections to the R&R (Doc. # 29), and Petitioner filed a reply to Respondents' Objections (Doc. # 30). The Court now rules on the petition.

**I. STANDARD OF REVIEW**

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the [M]agistrate." 28 U.S.C. § 636(b)(1). It is "clear that the district judge must review the magistrate judge's findings and recommendations *de novo if objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*) (emphasis in original). Because Respondents filed objections, the Court will review the Petition *de novo*.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Except where noted, the following findings come from the R&R and have been accepted because there was no objection. Petitioner is a native and citizen of Albania who was admitted to the United States as a refugee and granted asylum on March 31, 1992. R&R at 1. In April 1994, Petitioner became a lawful permanent resident of the United States, retroactive to April 1, 1992. R&R at 1. On February 25, 2000, Petitioner was convicted in California Superior Court of receipt of stolen property and sentenced to two years imprisonment. R&R at 1-2. Petitioner was granted a waiver of inadmissibility under section 212(c) of the Immigration and Nationality Act ("INA"), and granted the status of lawful permanent resident under section 245(a) of INA, during removal proceedings on September 26, 2001. R&R at 1.

On September 3, 2003, Petitioner was convicted of conspiracy to commit grand theft, and sentenced to two years imprisonment. R&R at 2. On October 8, 2003, Petitioner was convicted of attempted grand theft, and sentenced to eighteen months imprisonment. R&R at 2.

On August 18, 2004, the Department of Homeland Security ("DHS") issued Petitioner a Notice to Appear and charged Petitioner with removability pursuant to 8 U.S.C. § 1227 (a)(2)(A)(iii), as an alien convicted of an aggravated felony defined by § 1101(a)(43). R&R at 2. Petitioner admitted the conspiracy conviction during the removal proceedings, but denied the receipt of stolen goods conviction and the charge of removability. R&R at 2. In a later removal proceeding, Petitioner argued that his 2000 conviction for receipt of stolen property was waived by the prior grant of a section 212(c) waiver. R&R at 2. Petitioner ultimately admitted the 2003 attempted theft conviction in later proceedings, and <u>conceded the charge of removability for having committed an aggravated felony as defined in § 1101(a)(43)</u>. R&R at 2.[1]

---

[1] As will be discussed below, whether removability has been conceded now appears to be disputed.

1    The Immigration Judge ("IJ") sustained both charges of removability. R&R at 2. Petitioner submitted an application for withholding of removal under the Convention Against Torture. R&R at 2. During a hearing, Petitioner and his wife testified regarding the 1997 murder of Petitioner's brother, and the threats to Petitioner's life received by his wife when he was in Albania attending his brother's funeral. R&R at 2. Following this hearing, on December 16, 2004, the IJ denied Petitioner's application. R&R at 2.

Petitioner filed an appeal of the IJ's decision on January 14, 2005, and the Board of Immigration Appeals ("BIA") sustained the IJ on April 28, 2005. R&R at 2. On April 14, 2006, the Ninth Circuit reversed the BIA's decision and found that the BIA had abused its discretion in failing to consider Petitioner's claim under the Convention Against Torture. R&R at 2.

On May 8, 2006, DHS filed a request for a supplemental briefing schedule regarding Petitioner's eligibility for protection under the Convention Against Torture. R&R at 2. The Ninth Circuit mandate issued on June 6, 2006. R&R at 2-3. The BIA did not respond to DHS' request for a supplemental briefing schedule, and on August 1, 2006, Petitioner's counsel filed a pleading indicating no objection to DHS' request. R&R at 3. On September 12, 2006, the BIA acknowledged the remand and on September 27, 2006, Petitioner's counsel again submitted a non-opposition to DHS' request for a briefing schedule. R&R at 3.

On October 2, 2006, the BIA stated that although counsel had represented Petitioner before the Ninth Circuit, it would not recognize him as counsel of record until he filled out the appropriate form. R&R at 3. Subsequently, Petitioner's counsel completed the form on October 20, 2006 and forwarded the form to Petitioner for his signature on October 23, 2006. R&R at 3. Counsel then forwarded the completed form with the requisite signatures to the BIA. R&R at 3. On November 16, 2006, the BIA issued a twenty-one day briefing schedule. R&R at 3.

The BIA rejected Petitioner's application for Convention Against Torture protection and dismissed his appeal on December 29, 2006. R&R at 3. On January 26, 2006, Petitioner filed a petition for review to the Ninth Circuit Court of Appeals. R&R at 3. On February 1,

- 3 -

2007, Petitioner filed a motion for stay of deportation. R&R at 3. The Court of Appeals suspended its previous briefing schedule, of opening brief due by June 15, 2007, and a responsive brief due by August 14, 2007, and instead ordered a response to stay the motion by April 29, 2007. R&R at 3. On February 14, 2007, Petitioner filed a motion to proceed *in forma pauperis*. R&R at 3.

On June 4, 2007, the Court of Appeals issued the following order:

> The absence of a timely response to the stay motion is construed as a statement of non-opposition to the stay motion. Accordingly, the temporary stay continues in effect until issuance of the mandate or further order of the court . . . . The motion to proceed ifp is granted. The record has been filed. The opening brief is due 9/4/07, the answering brief is due 11/5/07; and the reply brief is due 14 days after service of the answering brief.

R&R at 3.

## III. ANALYSIS

### Detention under 8 U.S.C. § 1231 verses 8 U.S.C. § 1226(c)

Under 8 U.S.C. § 1226(c), "the Attorney General shall take into custody any alien who is removable from this country because he has been convicted of one of a specified set of crimes." *Demore v. Kim*, 538 U.S. 510, 513 (2003) (internal quotations omitted). However, such person may still challenge whether he or she should be removed, therefore, such person is not subject to a "final" order of deportation. 8 U.S.C. § 1231 governs detention following a final order of removal. *Demore*, 538 U.S. at 527. In the R&R, the Magistrate Judge concluded and this Court agrees, that in this case the Court is considering Petitioner's detention pursuant to 8 U.S.C. § 1226(c) because any "final" order of removal is still on appeal to the Ninth Circuit Court of Appeals. *See* R&R at 3.

### *Joseph* Hearing

When a person is detained under 8 U.S.C. § 1226(c), the person may request a hearing pursuant to *Matter of Joseph*, 22 I. & N. Dec. 799, 199 WL 3309053 (BIA 1999). At this hearing, the person is, "entitled to raise any nonfrivolous argument available to demonstrate that he was not properly included in a mandatory detention category." *Demore*, 538 U.S. at 514. A "'*Joseph* hearing' is immediately provided to a detainee who claims that he is not

- 4 -

1  covered by § 1226(c). ... At the hearing, the detainee may avoid mandatory detention by
2  demonstrating that he is not an alien, was not convicted of the predicate crime, or that the
3  INS is otherwise substantially unlikely to establish that he is in fact subject to mandatory
4  detention." *Id.* at 514, n. 3.

5  The Magistrate Judge found that this Court should consider Petitioner's petition in this
6  case despite the fact that the record does not show that Petitioner requested a *Joseph* hearing.
7  R&R at 4. In Petitioner's reply, Petitioner does not assert that he requested a *Joseph* hearing
8  to challenge whether his is subject to "mandatory detention."  However, despite not
9  requesting a *Joseph* hearing to argue whether he is subject to mandatory detention, Petitioner
10 also argues that he has not conceded that he is a "deportable" and that his objections in that
11 regard are "a complicated legal question subject to potential challenges in Mr. Makaj's
12 pending appeal." Doc. #30 at 2, n. 1. Thus, Petitioner would argue that whether he is subject
13 to "mandatory detention" is not the issue in this habeas case. Instead Petitioner would argue
14 that the issue is whether he has been subject to an unconstitutionally long confinement. Doc.
15 #30 at 3. Because of how Petitioner has framed this issue at this point, the Court need not
16 reach whether the failure to request a *Joseph* hearing would preclude habeas relief.

**Length of Mandatory Detention**

18 As indicated above, Petitioner has not placed the issue of whether he is subject to
19 mandatory detention before this Court. Therefore, for purposes of the analysis in this Order,
20 this Court will assume that Petitioner is subject to mandatory detention as a removable alien
21 under 8 U.S.C. § 1226(c). Thus, the next question is whether an alien who is subject to
22 mandatory detention as a removable alien, who does not have a final order of removability
23 because of various challenges he is making to his removal, is entitled to a bail hearing.[2] This

---

[2] For clarification, the Court will identify the Court's meaning of the words used herein.  The Court uses removable and removability to mean that the government may remove the Petitioner from the United States because the Petitioner fits within the definition of a removable alien under 8 U.S.C. § 1226(c). Petitioner may challenge his "removability" in two ways. One way is to argue that he does not fit within the definition of a removable alien – for example because he was not convicted of the predicate crime. The second way

- 5 -

1  issue was addressed in *Demore v. Kim*, 538 U.S. 510 (2003) and *Tijani v. Willis*, 430 F.3d
2  1241 (9th Cir. 2005).

3  In *Demore*, the Supreme Court addressed whether a person could be held in no-bail
4  civil detention under 8 U.S.C. § 1226(c). The Supreme Court held that the detention of a
5  person for the limited period of his removal proceedings is constitutionally permissible.
6  *Demore*, 538 U.S. at 531.[3] In reaching this conclusion, the Court stated, "In sum, the
7  detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of
8  cases in which it is invoked, and about five months in the minority of cases in which the alien
9  chooses to appeal." *Id.* at 530.

10  This case would appear to fall within the ruling of *Demore*. Specifically, Petitioner
11  is, for purposes of this analysis, a deportable alien who is subject to mandatory detention
12  under 8 U.S.C. § 1226(c). Therefore, his no-bail civil detention is constitutional. However,
13  this case may be distinguishable from the reasoning of *Demore* because Petitioner has been
14  in custody since August 16, 2004, over three years. Doc. #1 at 4.

15  In *Tijani v. Willis*, 430 F.3d 1241 (9th Cir. 2005), a panel of the Ninth Circuit Court
16  of Appeals addressed a situation in which a person was in mandatory detention pursuant to
17  8 U.S.C. § 1226(c) for two years and eight months. In that case, each member of the panel
18  wrote separately. Two members of the panel in *Tijani* agreed that Tijani was entitled to a

---

to challenge the ultimate removal from the United States is to argue that even if Petitioner is removable, he is nonetheless seeking withholding of removal or cancellation of removal – for example under the Convention Against Torture which allows a removable alien to avoid removal in certain circumstances. The Court has construed "final order of removal" to mean when the Court of Appeals (or the Supreme Court if applicable) completes its review and the order becomes "final." However, the Court notes that some other courts seem to use "final order of removal" to mean when the BIA completes its process, including appeal within the BIA only, and the BIA issues its final order. Finally, the Court has used "removable" as synonymous with "deportable" and has interpreted Petitioner's use of the word deportable as meaning removable.

[3] In *Demore*, the alien had conceded that he was deportable.

- 6 -

1 bail hearing after this length of detention. *Tijani*, 430 F.3d at 1242-43.[4] In this case,
2 Magistrate Judge Duncan found that the facts were similar to *Tijani* and recommended that
3 this Court order a bail hearing for Petitioner. The Government objects.

4     In its objections, the Government argues that this case is more similar to *Demore* (in
5 which the detention without a bail hearing was constitutional) and distinguishable from
6 *Tijani* (in which a bail hearing was required). The Government argues that *Tijani* is
7 distinguishable for two reasons. Objections at 3.

8     The first argument the Government makes as to why *Demore* and not *Tijani* controls
9 is that the length of the administrative proceedings in Petitioner's case was only 14 months.
10 Objections at 3. The Government fails to explain under what case law the length of detention
11 issue encompasses only the administrative proceedings, as opposed to the total detention.
12 Therefore, the Court does not find this argument persuasive.[5] *But see Mboussi-Ona v.*
13 *Crawford*, 2007 WL 3026946 (D. Ariz. 2007).

14     The second argument the Government makes as to why *Demore* and not *Tijani*
15 controls is that in this case, like the detainee in *Demore* and unlike the detainee in *Tijani*, the
16 Petitioner has conceded removability. Objections at 3. As indicated above, in responding
17 to the Government's objections, Petitioner has conceded that the issue of his removability is
18 not currently before this Court, but he disputes whether he has completely conceded before

---

[4] In dissent, Judge Callahan notes,

> The constitutional limit, if any, to the duration of an alien's detention under § 1226 ... was left open by the Supreme Court in *Demore*. ... [The reasoning of *Demore*] may be read as implying a limit to the duration of detention pending a determination of removability, or as holding that because the removal proceedings are by definition finite, there is no constitutional limit to the duration of detention under 1226(c). I agree ... that we need not and should not resolve this issue at this time. I would simply hold that when the district court on January 21, 2004, denied Tijani's habeas petition, he had not shown that the duration of his detention under § 1226 was unconstitutional.

*Tijani*, 430 F.3d at 1252-53 (Callahan, J. dissenting) [footnotes omitted].

[5] To the extent the Government intended to argue that all other delay should be attributed to Petitioner, that will be addressed below.

- 7 -

the Court of Appeals that he is removable.[6] Unfortunately for this Court, the Government states that Petitioner has conceded removability without a citation to where in the record this allegedly occurred. Objections at 3. Similarly, Petitioner argues that he has raised the issue of whether he is "deportable" with the Court of Appeals without citation to where in the appellate record this might be found. Doc. #30 at 2, n.1. Therefore, as to the issue of whether Petitioner in this case has conceded removability, this Court is left with conflicting assertions of counsel without any evidence on which this Court might base a factual finding.

In the R&R in the analysis section, the Magistrate Judge did not reach a conclusion about whether Petitioner had conceded removability, but concluded that even if removability had been conceded, the fact that Petitioner meets the criteria for mandatory detention does not end the inquiry of whether that period of mandatory detention can nonetheless be unreasonable under constitutional standards. *See* R&R at 4.[7] In reaching this conclusion, the Magistrate Judge applied *Zadvydas v. Davis*, 533 U.S. 678 (2001).  The Magistrate Judge applied *Zadvydas* because *Zadvydas* dealt with a situation where detention was indefinite, unlike *Demore* where the Court found that the detention would be for a short duration with a definite termination point. 538 U.S. at 529. The Magistrate Judge found the reasoning of *Zadvydas* more persuasive than *Demore* even though *Zadvydas* dealt with detention after a final order of removal had issued, verses *Demore* which, like this case, dealt with an individual who was subject to mandatory detention before a final order of removal issued. As discussed above, in this case, the issue of removability, or exceptions to removal, or both, is on appeal to the Ninth Circuit Court of Appeals and the Court of Appeals has stayed Petitioner's deportation.

---

[6] It is undisputed that Petitioner is appealing whether he is entitled to some exception from removal, but he may also be appealing whether he is removable at all.

[7] However, as indicated in the factual background section above, in the R&R's factual background recitation, the Magistrate Judge concludes that Petitioner did concede removability.

- 8 -

Initially, the Court agrees with the R&R that Petitioner's mandatory detention has not been for a short duration as seemingly envisioned by *Demore*. Conversely, unlike *Zadvydas*, wherein the government could not accomplish removal of the petitioner in the foreseeable future, in this case, the government claims it can immediately remove Petitioner, but Petitioner's own actions prevent such removal. Specifically, Petitioner has had his removal stayed pending his appeal. Thus, nothing could be done by the government (or presumably by the petitioner) in *Zadvydas* to effect petitioner's removal, therefore, there was the potential for permanent confinement. In this case, when confinement will end is within Petitioner's control, should he choose to drop his appeals. Certainly Petitioner has a right to prosecute his appeals within the court system, however, the additional right he seeks in this Petition is to be free within the United States, after the government found him removable, while he uses the court system. Because this Petitioner, unlike the *Zadvydas* petitioner, has control over when his confinement will end, the Court finds this case distinguishable from *Zadvydas*.

This conclusion – that Petitioner's use of the appellate system should not form the basis of an unconstitutional detention claim against the government – is supported by footnote 14 of *Demore* which states that, "Respondent contends that the length of detention required to appeal may deter aliens from exercising their right to do so. ... As was have explained before, however, 'the legal system ... is replete with situations requiring the making of difficult judgments as to which course to follow,' and even in the criminal context, there is no constitutional prohibition against requiring parties to make such choices." *Demore*, 538 U.S. at 503, n 14.[8] Further, courts have concluded that delay that is attributable to the

---

[8] Based on this language, an argument can be made that "final order of removal" as envisioned by *Demore*, which would typically take one and one-half months or only five months with an appeal, does not include the time to appeal to the Court of Appeals. *Compare Demore*, 538 U.S. at 530 *with* Footnote 2 above. *See also Mboussi-Ona v. Crawford*, 2007 WL 3026946, *5 (D. Ariz. 2007) (holding that the time to appeal to the Circuit Court of Appeals which is attributable to Petitioner is not included in a *Tijani* analysis, "If the *Tijani* gloss applies in this manner, then every judicial appeal will exceed this 'expedited' standard. This would mean that by merely seeking judicial review, every alien found removable would be entitled to an individualized bond hearing and possible

- 9 -

1  immigrant can justify continued detention, *see Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir.
2  2003) (cited by *Tijani*, 430 F.3d at 1246, n.4 (Tashima, J. concurring)), and the Supreme
3  Court agrees. *See Demore*, 538 U.S. at 530-31 (finding that the immigrant's request for a
4  continuance helped justify the longer than average detention in this particular case).

5  However, in *Tijani*, two members of the panel ordered a bail hearing for a petitioner
6  who was subject to mandatory detention pending the issuance of a final order of removal.
7  430 F.3d at 1242.[9] At least one member of the panel reached this conclusion even though
8  Tijani had requested continuances early in the process. *Id.* at 1249 (Tashima, J. concurring).
9  Moreover, two members of the panel relied on *Zadvydas* to reach the conclusion that Tijani
10 was entitled to a bail hearing after a two-year and eight month detention. *Id.* at 1242.
11 Neither party disputes that Petitioner's detention in this case has exceeded the detention in
12 *Tijani*, however, as discussed above, the government argues that only 14 months of the
13 detention can be attributed to the administrative proceeding.

14 Thus, it would appear that the facts of this case are so similar to *Tijani* that it is
15 virtually indistinguishable and should control whether Petition is entitled to a bail hearing.
16 However, the only basis on which one member of the panel distinguishes *Demore* is that in
17 *Tijani*, unlike *Demore*, the immigrant had not conceded deportability. 430 F.3d at 1242. If
18 this is the only relevant distinction from *Demore*, as opposed to that the length of detention
19 in *Tijani* was significantly longer than the length of detention recounted as average in
20 *Demore*, then whether Petitioner has conceded removability in this case would decide
21 whether he falls under *Demore* or *Tijani*. As discussed above, the Court cannot determine
22 on this record whether such a concession has in fact been made. Therefore, the Court will
23 order supplemental briefing as follows:

---

26 release.")

27  [9] It appears that "final order of removal" in this context is being used to include the
28 time to appeal to the Court of Appeals.

- 10 -

**IT IS ORDERED** that within 15 days of this Order, each party shall file a simultaneous supplemental brief addressing:

1. Whether Petitioner has conceded removability. Specific citation should be made to any appropriate excerpt of the record, which should be attached to the supplemental brief,
2. If Petitioner has not conceded removability, whether the failure to request a *Joseph* hearing can be deemed to be a concession of removability for purposes of an unconstitutional detention (based on length of detention) claim.

No responses or replies will be permitted.

DATED this 29th day of October, 2007.

_____
James A. Teilborg
United States District Judge